Good morning, Albert Peacock of Kiesel, Young & Logan on behalf of the defendant and appellant Titan Maritime. This case in preparing for argument has a lot of very juicy, very interesting issues. Issues that have been addressed by the Supreme Court that involve international law, that involve, at least in our view, a split between the circuits on narrow versus broad arbitration agreements. It involves an interesting case where the ship that ran aground, it had to be pulled off the reef before it spilled oil. But in preparing for argument, it dawned on me that it really is much simpler than we've made it out to be. The case really comes down to whether or not Cape Flattery met its burden of proving that there is no plausible interpretation of the arbitration agreement that would cover the factual allegations they have raised against my client. As the Supreme Court said in United Steelworkers v. Warrior and Gulf Navigation, the party opposing arbitration, quote, shoulders a heavy burden of proving with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Now, you've jumped over some things. What law are we applying to make this determination? You're trying to figure out whether the language of the arbitration clause, basically the rising under language, covers what's at dispute? Correct. And what law are we now applying to determine that question? Even if we apply the narrowest of the narrowest U.S. law, which is the Mediterranean and the tracer interpretation of a rising under So, for purposes of the argument at the moment, it's federal law and it's Ninth Circuit law. Correct. And even under that law, Cape Flattery has not shouldered its heavy burden of establishing that the allegations in its claim are not susceptible of an interpretation that falls within the arbitration agreement. Now, what Mediterranean and tracer tell us, if those are to apply, is that a rising under is narrow, and we disagree with that, and we think that's a rule. But even if we follow Mediterranean and tracer's interpretation, then what we look at is whether the allegations in Cape Flattery's complaint involve the interpretation or performance of the salvage agreement, the latter being the most important. Do the allegations raised in the complaint involve my client's performance of the salvage agreement? Of course they do. What's alleged is that we were negligent in the way in which we performed the salvage agreement. Negligent or grossly negligent? Well, the argument is that we were grossly negligent. But either way, it involves the exact acts that we were But there's no liability against your client if it's mere negligence, correct? Correct. Under Open 90, we have no liability as a responder if we were merely negligent. Where are you getting this interpretation of performance language? Is that from our case law? Mediterranean and tracer But performance in that context means did you perform it? It doesn't mean how did you perform it necessarily. It doesn't supply a standard for what your duty was. Nothing is coming out of the statute as I understand it. Neither the obligation nor the interpretation. The way this somewhat unusual statute salvaging is set up, it's simply a question of federal and Hawaii law, right? Your Honor, we believe that using the common interpretation of the word performance, which doesn't require judicial prior case law or statutory interpretation, under the common usage of the word performance, which is what you look to in interpreting a contract, this involves the performance The word performance isn't in the contract. Correct. Correct. You also use common language when interpreting statutes. That's not in the statute. It's in the case law. Can you use common language in your case law? I believe we should all be using the common usage of the word performance when evaluating the claim in this case. The allegation is that we performed in a way that was grossly negligent. What specifically was wrong with our performance? It was the selection and use of the tone line, which were specifically contemplated by the contract here. It was in performing the contract in conjunction with Doesn't that lead to the conclusion that you This is where I got myself thinking about it. You may have a defense to the grossly negligent assertion because this is a contribution case, right? This is actually a contribution case. So even if you were grossly negligent, conceivably you would have a contractual defense which says you agreed to this. Correct. That's not an arising under case, though. It is arising under. It's a defense. It's a defense. What Kate Flattery has argued and what Judge Seabright agreed with is that the contract in this case is completely irrelevant to the contribution claim and that's not accurate. The word arising under has some history, i.e., it's in a federal statute about when a case arises under federal law, right? Correct. And in that context, a federal defense doesn't count. I agree. All right. So why is the same thing true here? Because arising under, again, as narrowly construed and we don't agree with Mediterranean or Tracer, but even if you take But we're bound by it, so let's take that. Excuse me? We're bound by them, so whatever your opinion of it is, we can't do anything about it. I don't believe that this panel is bound by Mediterranean and Tracer, and we briefly addressed that in our brief. We believe that in light of the Kenoshita history and in light of subsequent Supreme Court decisions, that this Court can and should overturn Mediterranean and Tracer. But I want to come back. Even if I accept Mediterranean and Tracer as being the law of this case, the arising under narrow arbitration agreement encompasses not just the interpretation of the contract, which is relevant to Cape Flattery's claims against us and to our defenses. It also involves our performance of the contract, which is relevant both to Cape Flattery's claims and to our defenses. What is it in the contract? What language is there in the contract that you claim directs you to perform your duties under the contract? It basically is to pull the ship off the reef and to get it to a safe place, to perform those duties with due care, with respect to the reef. What in the contract says that that's included in the duties that you've undertaken? There's nothing specific in the contract that says that we're to do our job with due care for the reef. However, the contract says... Is there something in the contract from which we should reasonably imply that that's part of your contractual undertaking? Yes. And then where's that? Your Honor, I would cite the court to excerpts of Record 19-3 at page 1, paragraph 1, which says that Titan agrees to use its best endeavors to salve as quickly as reasonably practicable the property by means of the personnel and equipment specified in Schedule 2 and or such other personnel and or equipment as may from time to time be agreed between Titan and on-site owner's representative. And then it talks about the Cape Flattery's on-site representative being part and parcel of the collaborative effort to pull the vessel off the reef. In addition, the on-site representative has the ability, if he thinks we're doing something wrong, to immediately cease all salvage operations. I think it's also important to understand that this salvage effort is part of an OPA 90 structure, an Incident Command Structure, which is referenced in the complaint. And under the Incident Command Structure, the captain of the port of the Coast Guard as the federal on-scene coordinator has the final say in every decision. The state on-scene coordinator representing the state of Hawaii also has a say. These are all defenses to why you weren't grossly negligent or why you shouldn't have to pay contribution. But how do they implicate the contract? I don't believe they're solely defenses because they involve the interpretation and they involve the performance of the contract. And under Mediterranean Tracer's very narrow interpretation of arbitration clauses, if it is even plausible to argue that the interpretation or performance are involved in the performance of the contract, then all doubts must be resolved in favor of arbitration. And that's where Cape Flattery has failed to meet its burden of proof. It can argue that it is more plausible that the interpretation and performance of the contract are not involved. It can argue that 9 out of 10 judges surveyed would say that this did not involve. But if it's plausible that the claim involves the interpretation or performance of our contract, then even under Mediterranean and Tracer, it must be compelled to arbitration. Let me go back, if I can, to an argument you've skipped over. You've not conceded it, but I want to pick it up. And that is whether or not we should apply the Mediterranean line of cases because it does appear that we're at least a little out of step with some of the other circuits. But at the same time, we are, and all the circuits, are trying to figure out what is the intent of the parties when they sign the contract providing for arbitration. Now, you signed a contract, or your client signed a contract, contemplating performance of certain duties in the Ninth Circuit. And at the time of signing that contract, you knew what Ninth Circuit law was. And if we're trying to figure out, then, what did you intend, why should we figure out, well, what would you have intended if you'd signed this contract in the Fifth Circuit? Because you signed the contract in the Ninth Circuit. And the ultimate touchstone is not words sort of freestanding. It's what did you intend when you signed this contract here? Your Honor, the contract was not signed here. So when you signed the contract contemplating performance here. Understood, and that's correct, Your Honor. I would submit that neither party were contemplating Mediterranean or Tracer when this salvage agreement and this arbitration agreement were entered into. And neither party is an unsophisticated entity. Neither party, you know, I mean, you're big boys, and I assume you've got lawyers. And, you know, if anybody's going to be sort of tasked with the consequences of what they do, it's going to be clients who are sophisticated like both parties here. Your Honor, they are sophisticated parties. Yeah, sure. But we're dealing with a potential oil spill in Hawaii. Time is of the essence. Yeah, yeah, but not when you sign, not when you, I mean, this contract existed, this form contract existed long before that ship went on the reef. Correct, and a very similar version of that contract, which we referenced in our reply brief, was interpreted very broadly by a New York court. Yeah, well, that's because it was New York. I'm not sure how similar it was. I mean, there is a tendency in your briefs to flip over from this arising under language to arising out of, and to me those are really quite different. Out of seems to fit your model. Under doesn't seem to. Your Honor, we would ascribe to the House of Lords approach, which is forget whether it's arising out of or arising under or related to. This is semantics. What the agreement shows is an intent by the parties to submit any dispute that has any connection to the performance of their contract to arbitration, and that's now being thwarted by cape flattery. That's the question, not the answer, right? I mean, if that were the case, then you could use livid instead of arising under. It would come out the same way is what you're saying. It doesn't matter what those connecting words are. That's correct, Your Honor, and in fact, I had a chart, which I did not submit with my briefs, but just to remind myself, in which you go through arising under, and some courts say it's narrow, and some say it's broad, and arising out of, and some say it's narrow, and some say it's broad, and arising and related to. Now, while you're coming to the end of your time, why don't we hear from the other side, and then we'll give you a chance to respond. Thank you. Thank you, Your Honors. Nenad Crick for Appellee CFL. Your Honors, as Judge Fletcher mentioned, this contract was drafted by Titan, the salvage agreement. It's actually a preprinted form with Titan's logo on it, and Titan could have written its salvage agreement to use in its arbitration clause the words arising under, or related to, or in connection with, or similar words that are recognized by this court as being a broad arbitration clause. But Titan did not. Titan used the words arising under, which were, as the court knows, defined in the Mediterranean and tracer line of cases. But you know, as the dialogue between Judge Fletcher and your opponent indicated, those cases are really out of step with what the rest of the circuits have done. They're not at all, Your Honor. You don't think they are? They're not at all out of step, and the cases cited by tracer, which we took pains to discuss at length in our brief, they either involve different arbitration clause, or they involve parties that were actually disputing items that were contractual, such as price or quality of the goods. One good example, Your Honor, is the Fifth Circuit. Fifth Circuit uses different words, and they talk about broad clauses, but in the end, they come to the same result, because they look at specifically what Judge Fletcher mentioned, namely, did the parties evidence intent in their arbitration clause to arbitrate this specific claim? And that is the issue here. You have the case, for example, of Texaco, which this court cited and followed in tracer. And Texaco happened to be a maritime case. It was a charter where Texaco chartered a vessel from America, and during the same arising under arbitration clause, and while the vessel was performing a voyage under the charter, she struck Texaco's dock, and Texaco sued American for damages to the dock. And the Fifth Circuit held that the existence well known of the charter is not dispositive of this claim for deleterial damages, and the claim as pleaded neither arises out of nor depends on the charter. Then you can, of course, that is exactly the case here, Your Honors. As the court noted, the contract says absolutely nothing about natural resource damages or indemnity for natural resource damages or what type of tow line is to be used in salvage. Why isn't it a reasonable interpretation of the contract that any sensible salvage operator, such as Titan, would use due care? You know, that certainly seems to me implicit in many contracts. You don't have to always say it. Your Honor, because number one, it doesn't say anything about it. I took that as a premise. I'm saying why is it not implicit in the contract? It's not, Your Honor, because there is a distinction between the removal part of the operation and the salvage. Removal is a federal obligation under the federal law. When you say remove, you mean remove the ship from the reef. That is correct. That is the ship owner's obligation under the OPA 90. You must remove the vessel from the reef, and removal is a federal obligation to eliminate or mitigate threat to the environment. So what do you say? Are you considering that part as independent of the contract? That is correct, Your Honor, because the salvage contract per se, and this goes through the history of salvage because salvage predates environmental concerns. Salvage contract was simply a contract to take out of danger or mitigate the danger to private property. You salvage private property. And so here we have intersection of the two, but Titan used the form that is only focused on the private property salvage part. This contract does provide, as I understand it, though, for the presence of a representative of Cape Flattery at the salvage. And I'm sorry, no? I didn't want to interrupt, Your Honor. And as was being discussed before, this case is a case for contribution. It's not really directly on the tour. Correct. So it could end up being relevant to, couldn't it, to the contribution action, whether your representative said, yeah, go ahead and do it that way or directed it to be done that way? Your Honor, as a tort defense, yes, but not as a contractual matter. This court held in the Royal Insurance case, which we cited in our brief, that in a case based strictly on gross negligence, you cannot disclaim gross negligence through contractual provisions. And indeed, as I say, there are no contractual provisions here that are relevant to damage to environment. That's true as to the negligence, but what about, this is, as I say, it's a contribution case. That's what I keep trying to sort out. It's not a case directly on the gross negligence. After you establish the gross negligence, then you have to decide whether you, your company, actually gets the money. And it seems to me for that purpose, it would be somewhat relevant whether you were complicit, no? No, Your Honor. The way it works under maritime law is under the OPA 90, CFL is strictly liable for the damage to environment that Titan caused. But under general maritime law, Titan and CFL are joint tortfeasors in respect to the damage. But then the Clean Water Act gives Titan, as a responder, a partial tort immunity unless Titan acted with gross negligence. And this is why our general maritime law claim for contribution or indemnity, which is specifically preserved by the OPA 90, has to go through gross negligence. Because if we don't prove gross negligence, we lose. But when it comes out the other side, is the contract still irrelevant? The contract is still relevant. No matter, even without the contract, for example, Your Honor, if Titan had been a volunteer responder. Suppose the contract said in salvaging this ship, don't pay any attention to the coral reef and just get it out of there as fast as possible and it's not your problem how the coral reef turns out. Suppose that was what the contract said. Would it be irrelevant to the contribution cause of action, not to the gross negligence? I understand if somebody else was trying to sue Titan, it would be irrelevant. But to the contribution cause of action, is it irrelevant what the contract says about the way in which this is to be performed? Well, if it was an action for contribution under ordinary negligence, certainly it would be admissible as a contractual defense. If it was gross negligence, then under this Court's law, under the Royal Insurance case, it would not be allowed to introduce contractual disclaimer against the claim of gross negligence. Okay, now here we don't have a disclaimer, but we have the participation or the possible participation of your representative in the actual doing of this act. Yeah, Your Honor, but the contract does not say that our client will take care and do for Titan the review of environmental concerns or anything. It simply says our client will be there. So, it's not a contractual defense to a claim for gross negligence of Titan who was hired to do the job as to damage to environment. Your Honor, let me focus this on the Mediterranean case. In the Mediterranean case, an argument was made or a claim was made that a claim for conversion of pre-qualification documents was a dispute over performance of the contract. And this Court rejected that argument and said no. The conversion was distinct from performance because the contract did not address pre-qualification documents more than just saying in pre-qualification phase each party would bear its own rights. So, this Court looked as to whether the contract in a meaningful fashion addressed a tort claim that was being brought. And the Fifth Circuit, and this is a nice distinction with the Texaco case that I mentioned, this was also a SEDCO case which is cited in both parties' briefs. It was a charter party. It involved the arising under arbitration clause, and there was an oil spill, and the third parties asserted claims for oil spill damages against SEDCO. SEDCO sued its charter for breach of duty to defend and indemnify SEDCO for those third-party claims. But the charter in SEDCO included provisions, explicit provisions regarding indemnity for oil spill-related damages. And on that very basis, on the basis of explicit provisions which are conspicuously missing here, the Fifth Circuit distinguished Texaco and said, no, this claim arises under the charter because the charter covers it. And I would just want to mention, Your Honors, the counsel was talking about interpretation. Well, before Judge Seabright, Titan conceded that CFL's claim does not involve interpretation of the salvage agreement. And indeed, there is nothing in the salvage agreement to interpret when it does not speak about natural resource damages. It does not speak about indemnity for natural resource damages. It does not speak about what type of toll lines. If I can interrupt you, I have a question. And it's not specific to this case. It's more generally. I do think that the circuit law on what arising under means is somewhat different from circuit to circuit, and the law as to what that means is narrower here, that is to say more favorable to your client here than it is in some of the other circuits. It seems to me desirable that the term should mean the same thing, arising under, across all of the circuits. How much burden is it on the various parties if the term arising under means one thing in the Ninth Circuit and another thing in the Fifth Circuit and another thing somewhere else? I mean, because the argument that I was going back and forth with your adversary was, well, listen, you knew this was a contract to be performed in the Ninth Circuit and you had to know our law. That's a bit of a nuisance if the contract has to be drafted differently for something in Hawaii compared to something along the Gulf Coast. What are we supposed to do with that? The answer to that was given by Second Circuit in a case where they, which is cited in the opposing brief, and I believe in both briefs, where they narrowed Kinoshita case, but they said so long as you use the phrase arising under, we will continue interpreting it the same way we did because the parties who have already contracted will have relied on our interpretation of those very words. So I agree with your concern, but your concern is looking forward. Your concern is one for the Supreme Court or for the change of law going forward. But in Kinoshita... Well, no, but I think he's asking in the context of, well, I mean, should we change our law to conform more with the other circuit? Isn't that the question? That was the question, but as I'm saying... And then that's for us to determine, isn't it? But, Your Honor, it's... To the extent we have room. You know, Your Honor, if the court wants to overrule its precedent, it always can through... Is there any case in any circuit dealing with this language, not arising out of or not arising in a relationship or not arising in connection with, but arising under that comes out the other way? I have not found any, Your Honor. I didn't see one either. No, I have not. To me, again, Titan wrote the contract, the wording of arising under, as the court says, is crystal clear in this circuit. And the expectation of the parties, I mean, it comes down to this, Your Honor, that Titan is asking the court to interpret the contract as if it included the words related to or in connection with or whatever. But under the Federal Arbitration Act, the court is required to determine whether the contract is written. Evidence is an agreement to arbitrate this specific claim. Isn't there... I thought, frankly, that this was pretty much what the case law was under the collective bargaining agreement arbitration provisions, which are not always... it's a little ambiguous whether those are FAA contracts or not, but certainly traditionally there's been a difference between clauses that say interpreting issues regarding the contract in cases that say any dispute. They've been interpreted differently in the collective bargaining agreement. Because the Supreme Court noted that when you're dealing with grievances under the collective bargaining agreement, everything arises out of the collective bargaining agreement. And this is what the court specifically said. That is why it is so difficult to... it's really comparing apples and oranges. Here you have a contract that addresses certain things and is completely silent about a liability that arises under statutory tort law. Okay? Thank you. Thank you very much. You've saved, I think, about a minute and a half. Two brief points. Could you begin by telling us whether there is any case in any circuit dealing with this language that comes out the other way? Not in an arbitration setting. Okay. There is a case that we cited called Jones v. R. R. Donnelly. It was a Supreme Court case that was interpreting a federal statute of limitations, 28 U.S.C. 1658, and it said that the words arising under when used in a statute of limitations has to be interpreted broadly. Well, broadly and narrowly is not useful. The question is what does it mean? I don't find it useful to say, well, it's broad or it's narrow. What does it say it meant? Well, what does that case say it meant? It just said it needed to be interpreted broadly. That's not helpful. The question is does it apply to something that doesn't involve an interpretation or an allegation of breach of contract? Two points I want to make very briefly. One is, Your Honor, is correct. There is a link between contribution and tort claims and contract claims, and that's evidenced in the First Circuit case of Maldonado v. PPG Industries, 514 F. 2nd. 614, which was cited in our reply brief at Pages 10 at SEC. In that case, Floor, an engineering company, designed a chemical plant. There was an explosion. Third parties were injured. The third parties sued the owner of the plant, and the owner of the plant in turn sued for contribution against Floor. And the court there said even though it's a contribution claim, it's clear that it will implicate the obligations and the liabilities and the responsibilities set out in the party's contract. Can I ask one other supervening question? Sure. Are you abandoning your claim that this should all be determined under English law? No. You didn't argue it at all today. Why not? That was my second point briefly. We were talking about the intent of the contract, and Mr. Creck pointed to look at the language, what was the intent of the parties. The intent of my client can't be determined by simply looking at the words arising under. You have to look at that entire provision in the contract, which included my client's British affiliate, who was the one that negotiated the contract with Cape Flattery, a Chinese company. It included language that the English Arbitration Act of 1996 would apply and that English law would apply and that this would be arbitrated in a London salvage arbitration in England. All of that has to be taken into consideration. My client didn't say that Ninth Circuit law would be used to interpret the contract. He didn't say that the Federal Arbitration Act or Chapter 2 of the arbitration title would apply. So I think we have to go broader, but I don't think you need to address those points because from our point of view, even under the narrowest interpretation of our clause, this dispute involves our performance of the salvage agreement. Thank you. Thank both sides for nice arguments. Case of Cape Flattery v. Titan Maritime is now submitted for decision.
judges: Tashima, Fletcher W. , Berzon